

FILED

AUG 17 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

In re                                    ) Case No. 12-34470-E-13
                                         ) Docket Control No. JLW-1
LAMAR R. SMITH,                          )
                                         ) Date: *Ex Parte*
                    Debtor.              ) Time: *Ex Parte*
_____ )

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM OPINION AND DECISION
### *Ex Parte* Motion to Extend Automatic Stay

The Chapter 13 Debtor commenced the present Chapter 13 case on August 7, 2012. He lists one asset on Schedule A, real property commonly known as 9434 Cross Fox Way, Elk Grove, California ("Cross Fox Way Property"). The Debtor states that this property has a value of $150,000.00 and is subject to liens totaling $389,251.58. Dckt. 1, Petition, Schedules, and Statement of Financial Affairs. This is the same address identified as the Debtor's residence on the Petition and Statement of Financial Affairs. Schedule B lists personal property assets and assets one expects of an average consumer debtor seeking relief under Chapter 13, and do not disclose any business interests or investments.

///

1    On Schedule D the Debtor lists two creditors – America's
2  Servicing Company[1] as having a claim in the amount of $310,510.58
3  secured by a first deed of trust against the Cross Fox Way Property
4  and Wells Fargo Home Mortgage/ASC having a claim in the amount of
5  $78,741.00 secured by a second deed of trust against the Cross Fox
6  Way Property.  The Debtor lists a $10,750.00 federal tax claim on
7  Schedule E (of which $6,000.00 is a priority claim) and $38,238.12
8  in general unsecured claims (of which $12,315.12 is a student loan
9  and $16,000.00 is a credit card debt) on Schedule F.

10    For Income, the Debtor (a family unit of 1) discloses gross
11  income of $8,244.97 a month from his employer of 12 years.    In
12  addition to the normal taxes and insurance deductions, the Debtor
13  also has $1,263.86 a month in pension and 457 Plan deductions.
14  Schedule I.

15    The proposed Chapter 13 Plan requires monthly payments of
16  $3,380.00 for a period of 60 months.    Of this, $3,016.92 is
17  earmarked to make payments on the claim secured by the first deed
18  of trust.  The balance of the monthly plan payment, $363.08 x 60 =
19  $21,784.80, are to pay administrative expenses (Debtor's counsel
20  and Chapter 13 Trustee), the priority tax claim, and then general
21  unsecured claim.    After allowing for Counsel's fees to be paid
22  through the plan ($2,519.00), the Chapter 13 Trustee fees
23  ($16,224.00, estimated at 8%) and the priority tax claim

25
26    [1]  Interestingly, on Schedule D the Debtor appears to incorrectly
list the creditor having a claim secured by a first deed of trust
against the real property as "America's Servicing Co."  Nothing in the
27  multiple filings by the Debtor indicate that a servicing company is a
creditor in this case.  Wells Fargo Home Mortgage/ASC (which as
28  discussed below in Wells Fargo Bank, N.A.) is listed as the creditor
having a claim secured by a second deed of trust.

2

($4,750.00), there is nothing to distribute to creditors holding general unsecured claims (the Plan proposing a 0.00% dividend). Dckt. 5.

As disclosed in the Petition and *Ex Parte* Motion, this is not the Debtor's first bankruptcy case. In each of his prior two cases the Debtor was represented by the same counsel who is representing him in this case. The prior cases are summarized as follows:

      A.   EDC Bankr. Case No. 12-31242

          1.   Counsel for Debtor: Jamil L. White

          2.   Attorneys' Fees Paid Counsel Pre-Petition: $0.00 of $3,500.00. Dckt. 7

          3.   Filed: June 14, 2012

          4.   Dismissed: July 2, 2012

          5.   Reason For Dismissal: Failure to file Chapter 13 Plan, Schedules A-J, Statement of Financial Affairs, Form 22C. Dckts. 3, 12

      B.   EDC Bankr. Case No. 12-29109

          1.   Counsel for Debtor: Jamil L. White

          2.   Attorneys' Fees Paid Counsel Pre-Petition: Not Disclosed

          3.   Filed: May 10, 2012

          4.   Dismissed: May 29, 2012

          5.   Reason For Dismissal: Failure to file Chapter 13 Plan, Schedules A-J, Statement of Financial Affairs, Form 22C. Dckts. 3, 10

### DISCUSSION OF *EX PARTE* MOTION

The Debtor filed an *ex parte* motion for an order extending the automatic stay on August 8, 2012, the day after commencing this bankruptcy case.[2] No basis for seeking this relief by an *ex parte*

---

[2] The *Ex Parte* Motion incorrectly states that the present bankruptcy case was commenced on July 16, 2012.

1   motion is stated by the Debtor or why impacted parties, now with
2   the third filing of a bankruptcy case by this Debtor, should not be
3   afforded a hearing on this Motion.

4         Pursuant to Federal Rule of Bankruptcy Procedure 9013, the
5   Debtor states in the *Ex Parte* Motion, Dckt. 8, with particularity,
6   the following grounds in support of the requested *ex parte* relief,

7         A.    The motion seeks to extend the automatic stay,
8         citing to and including in a footnote 11 U.S.C. § 362(c)(3).

9         B.    Prior bankruptcy case no. 12-29109 was closed by the
10        court on May 29, 2012, without the entry of a discharge.

11        C.    Prior bankruptcy case no. 12-31242 was closed by
12        the court on July 3, 2012, without the entry of a discharge.

13        D.    Pursuant to 11 U.S.C. § 362(c)(3)(a), because of a
14        prior bankruptcy filing within in a 12-month period preceding
15        the filing of the present bankruptcy case, the automatic stay
16        terminates after 30 days, and two prior filings within one
17        year prior to the third case precludes the automatic stay
18        going into effect.

19        E.    Pursuant to 11 U.S.C. § 362(c)(3)(B) the Debtor has
20        standing to seek an order of the court extending the automatic
21        stay.

22        F.    If the Debtor can convince the court by clear and
23        convincing evidence that the dismissal of the prior case was
24        not due to the willful inadvertence or negligence on the part
25        of the Debtor, the court may extend the automatic stay.

26        G.    Debtor's counsel "avers" that the third bankruptcy
27        case was filed in good faith and the prior case was dismissed
28        not due to the willful inadvertence or negligence of the

Debtor.

H.   The court is instructed by the Debtor to read his declaration and select what grounds exist for the relief requested in the Motion.

I.   Debtor's counsel (who represented the Debtor in the prior two cases and the third case) asserts that the Debtor may have been "less than adequately advised as to the Debtor's rights and responsibilities.   This may have led to the Debtor's unintentional failure to comply with his obligations and duties."

J.   Debtor's counsel asserts that if the stay is not extended that it will terminate prior to the first meeting of creditors.   It is suggested that this will result in creditors engaging in "last minute 'self-help' efforts to collect as much as possible during the 60 days before the Order of Discharge."

K.   A Chapter 13 Plan, announcing the Debtor's plans to pay certain secured and priority debts, should be completed while the automatic stay protects the Debtor.

As filed, the Motion fails to state with particularity grounds upon which the court may grant the requested relief.   First, it merely contains some general conclusions and provides no concrete grounds as to why and how the Debtor has twice, in the three months prior to the third bankruptcy case, failed to file the minimal documents required to initiate a Chapter 13 bankruptcy case.   A vague general reference is stated in the Motion that Debtor's counsel, in the prior cases "may" not have adequately advised his client.   This theoretical, abstract, nonspecific statement does not

constitute grounds stated with particularity.  Also, no contention
is made as to why or how the prior and now current counsel failed
to adequately advise the Debtor previously but will now adequately
advise the Debtor.

The Declaration of the Debtor, Dckt. 10, provides testimony
under penalty of perjury for the following:

A.   The Debtor has filed two prior bankruptcy cases
within the one-year period preceding the commencement of the
third case.

B.   The Debtor provides his opinion as to the effect of
11 U.S.C. § 362(c)(3)(A), that the automatic stay is effective
for only 30 days when one prior case was filed in the one-
period preceding the third case and the stay does not commence
when there are two prior cases filed within one-year of the
third case.[3]

C.   The Debtor "candidly and honestly" states that the
present case was commenced in "good faith."  The Debtor does
not testify as to facts and circumstances for the court to
understand how the Debtor reaches this conclusion.

D.   The Debtor testifies that the prior dismissals were
"NOT due to the willful inadvertence or negligence on my
part."  ¶ 4.  He does not affirmatively testify as to the
reason why he failed to comply in the prior cases or why they

---

[3]   11 U.S.C. § 362(c)(3)(A), for one case filed within the
preceding year, and §362(c)(4)(A), for two or more cases filed within
the preceding year, provides that the termination or no automatic stay
going into effect is based on cases "pending" within the prior year,
not filed.  Under the facts of the present case, this distinction does
not render a different result, as the Debtor's prior two cases were
filed and dismissed within the one-year period preceding the
commencement of the third Chapter 13 case.

were dismissed.

E.   The Debtor's testimony continues to state that, since he is not an attorney, he cannot determine if he was properly advised by his attorney in those cases (who was his attorney in the prior two dismissed cases).   This possible failure to provide proper advice may have led to the Debtor unknowingly and unintentionally failing to comply with his (unspecified) duties in the prior bankruptcy cases.

F.   Further, the Debtor testifies that after the dismissal of the two prior cases, he believed in good faith that his lender was reconsidering the possibility of a loan modification (which indicates that a loan modification was denied) to cure the arrearage on the loan.   After the dismissal of the second bankruptcy case the Debtor states he paid his lender $13,000.00 "in reliance on their indication that they were willing to approve a loan modification . . . ." ¶ 6.[4]

G.   The Debtor provides his conclusion that if the court does not extend the stay, creditors will be able to enforce their rights until the Debtor obtains a discharge. Specifically, his "mortgagor" will foreclose on his house, which the Debtor concludes will not be in the best interest of his creditors.   Notwithstanding his proposed Chapter 13 Plan providing for a 0.00% dividend to creditors holding general

---

[4]   As discussed below, the Debtor fails to disclose in the Statement of Financial Affairs such a payment.   The Debtor does disclose having chosen to pay another creditor $10,000.00 shortly before filing this bankruptcy case.   The amounts of cash this Debtor appears to have held and disburse to his preferred creditors concerns the court.

unsecured claims, he states under penalty of perjury, "[i]f I
am allowed to keep my house and stay in Chapter 13, they [all
the Debtor's creditors] will receive all of the money owed to
them." ¶ 7.

## DISCUSSION

While the Debtor seeks to "extend" the automatic stay,
Congress has provided that no automatic stay has gone into effect
in this case.  11 U.S.C. § 362(c)(4) provides (emphasis added),

> (4) (A) (i) if a single or joint case is filed by or
> against a debtor who is an individual under this title,
> and **if 2 or more single or joint cases of the debtor were
> pending within the previous year but were dismissed,**
> other than a case refiled under a chapter other than
> chapter 7 after dismissal under section 707(b), **the stay
> under subsection (a) shall not go into effect upon the
> filing of the later case;** and

> (ii) on request of a party in interest, the
> court shall promptly enter an order confirming that
> no stay is in effect;

> (B) if, within 30 days after the filing of the
> later case, a party in interest requests the court may
> order the stay to take effect in the case as to any or
> all creditors (subject to such conditions or limitations
> as the court may impose), **after notice and a hearing,
> only if the party in interest demonstrates that the
> filing of the later case is in good faith as to the
> creditors to be stayed;**

> (C) a stay imposed under subparagraph (B) shall be
> effective on the date of the entry of the order allowing
> the stay to go into effect; and

> (D) for purposes of subparagraph (B), a **case is
> presumptively filed not in good faith** (but such
> presumption may be **rebutted by clear and convincing
> evidence** to the contrary)--

> (i) as to all creditors if--

> (I) 2 or more previous cases under this title
> in which the individual was a debtor were
> pending within the 1-year period;

> (II) a previous case under this title in which
> the individual was a debtor was **dismissed**

8

within the time period stated in this paragraph **after the debtor failed to file or amend the petition or other documents** as required by this title or the court **without substantial excuse** (but mere inadvertence or negligence shall not be substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney), failed to provide adequate protection as ordered by the court, or failed to perform the terms of a plan confirmed by the court; or

(III) **there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under this title,** or any other reason to conclude that the later case will not be concluded, if a case under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; or

(ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, such action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor.

First, the Debtor presumes that "after notice and hearing" for the court to consider the motion means an *ex parte* motion in this case. 11 U.S.C. § 102(1) provides that the phrase "after notice and hearing" means such notice and hearing as is appropriate under the circumstances as appropriate under the particular circumstances. Under the Local Bankruptcy Rules in this District, a person may seek an order shortening time for a hearing, set a hearing on either a 28-day or 14-day notice. EDC Local Bankruptcy Rule 9014-1. The term "*ex parte*" is defined by the Local Bankruptcy Rules to mean "without prior notice." L.B.R. 9001-1(h). The Debtor has not provided the court with good cause for shortening the notice period from the minimum 14 days or to not require any hearing. L.B.R. 9014-1(f)(3). Rather, the Debtor

9

1  merely presumes that he is entitled to an order pursuant to an *ex*
2  *parte* motion as a matter of right. That presumption is incorrect.

3       The Certificate of Service filed by the Debtor also fails to
4  document that Wells Fargo Bank, N.A.[5], the creditor with the claims
5  secured by the Debtor's property, has been served pursuant to
6  Federal Rules of Bankruptcy Procedure 7004(h) and 9014. As a
7  federally insured financial institution, the Debtor must serve
8  Wells Fargo Bank, N.A. by certified mail addressed to an officer of
9  the bank. The Debtor has only mailed the pleadings to "Wells Fargo
10 Home Mortgage/ACS" by First Class Mail, not addressed to the
11 attention of an officer, and sent to a Post Office Box in
12 Des Moines, Iowa. The FDIC does not list an Iowa address for Wells
13 Fargo Bank, N.A. and the court has no idea of who or what is at
14 this post office box, as well as attempted service on a post office
15 box being insufficient. *Beneficial Cal., Inc. v. Villar (In re*
16 *Villar)*, 317 B.R. 88, 92-93 (B.A.P. 9th Cir. 2004) (holding that
17 service upon a post office box does not comply with the requirement
18 to serve a pleading to the attention of an officer or other agent
19 authorized as provided in Federal Rule of Bankruptcy Procedure
20 7004(b)(3)); *see also Addison v. Gibson Equipment Co., Inc., (In re*
21 *Pittman Mechanical Contractors, Inc.)*, 180 B.R. 453, 457 (Bankr.
22 E.D. Va. 1995) ("Strict compliance with this notice provision in
23 turn serves to protect due process rights as well as assure that
24 bankruptcy matters proceed expeditiously.").

25

26      [5]  In other cases before this court, Wells Fargo Bank, N.A. has
identified the operation known as Wells Fargo Mortgage as a division
27 within the Bank itself. This is also represented by Wells Fargo Bank,
N.A. on its web page for home mortgages, stating "Wells Fargo Home
28 Mortgage is a division of Wells Fargo Bank, N.A.
https://www.wellsfargo.com/mortgage/

1   Secondly, the Debtor has failed to provide the court with
2   clear and convincing evidence that this third bankruptcy case has
3   been filed in good faith and the presumption has been rebutted.  It
4   appears that the *Ex Parte* Motion fails to state grounds with
5   particularity and sufficient evidence has not been presented
6   because no such grounds exist.

7   From the three filings, it appears that the Debtor is
8   attempting to forestall a foreclosure on a home worth (in the
9   Debtor's opinion) $150,000.00 which secures a $310,510.56 claim
10  secured by a first deed of trust.  The terms of this claim cannot
11  be modified without the consent of the creditor. 11 U.S.C. § 1322.
12  The proposed Chapter 13 Plan filed in this third bankruptcy case
13  provides for curing the default and fund payment of a ($160,510.00)
14  negative equity to keep the house rather than making dividends to
15  creditors holding general unsecured claims.  In substance, the
16  creditors are requested to forgo a dividend to allow the Debtor to
17  retain a property with a negative ($160,510.00) equity.[6]  No
18  explanation is provided as to how the multiple filings and the
19  attempt to retain this property has a reasonable, rational,
20  economic basis consistent with the provisions of Chapter 13.

21  In attempting to justify the imposition of a stay in this
22  case, the Debtor testifies that he has paid $13,000.00 to his

23

24  ---
25  [6]   If instead of paying $3,016.92 monthly to preserve the
    property with a negative ($160,510.00) equity the Debtor obtained a
    replacement property with a monthly cost of $2,000.00 (which
26  represents a reasonable significant rent or mortgage), the Debtor
    would generate more than $60,000.00 for disbursement to creditors
27  holding general unsecured claims a 100% dividend.  This proposed
    treatment under the plan and terms for the property will call into
28  plan the issue of good faith in attempting to confirm the plan.  11
    U.S.C. § 1325(a)(3).

1   mortgage lender.    This is not disclosed in the Statement of
2   Financial Affairs.  The Debtor also states in the Statement of
3   Financial Affairs, but omits from his declaration, that he has paid
4   an additional Santander $10,000.00.  In the brief hiatus between
5   the second and this third bankruptcy case the Debtor has
6   distributed at least $23,000.00 to creditors holding prepetition
7   claims rather than disbursing that money through a confirmed
8   Chapter 13 plan.

9       In his Statement of Financial Affairs the Debtor discloses in
10  response to question No. 3 that he paid $10,000.00 to "Santander"
11  in July 2012.  Dckt. 1.  This statement does not disclose why this
12  payment was made and whether Santander had any interest in any
13  property of the estate.  Santander is not listed as a creditor in
14  this third bankruptcy case.  In the second bankruptcy case no. 12-
15  31242, no Schedules have been filed and the court cannot determine
16  how or why Santander was a creditor as of that filing based on the
17  pleadings filed by the Debtor in that case or this third bankruptcy
18  case.

19      In the second bankruptcy case, the Debtor did file a
20  Verification of Master Mailing List on which he states under
21  penalty of perjury the names and addresses of his creditors so that
22  they may properly receive notice in that case.  Santander is not
23  listed on the Master Mailing List in the second bankruptcy case,
24  but only "Car Loan......"[which likely was Santander, commonly a
25  creditor holding claims secured by vehicles in consumer cases, and
26  there was an error in printing the attachment to the Master Mailing
27  List], the Internal Revenue Service, and Wells Fargo Home
28  Mortgage/ASC.  Case No. 12-31242 Dckt. 4.  Santander Consumer USA

filed a proof of claim in the prior case in the amount of $11,458.99 (at 14.99% interest), which was secured by a 07 Dodge TR Dakota.[7]

Proofs of claim in the second bankruptcy case were also filed by FIA Card Services, N.A., and the California Franchise Tax Board. The Debtor has not included these creditors in the third bankruptcy case or disclosed payments made to them in the 90-days prior to the commencement of the third bankruptcy case.

In the Debtor's first bankruptcy case no. 12-29109, Dckt. 4, the Verification of Master Mailing list does not include Santander as a creditor or party to receive notice. Only Wells Fargo Home Mortgage/ACS is listed on the Mailing list in that prior case. Santander did not file a proof of claim in the first bankruptcy case, however Dell Financial Services, LLC, FIA Card Services, N.A., and Midland Funding, LLC filed proofs of claim in the first case. The Debtor has not included these creditors in the second and third bankruptcy cases filed.

Congress did not define what constitutes "good faith" in the context of 11 U.S.C. § 362(c)(3)(B) and (4)(B). It is well established in the Ninth Circuit that the consideration of good faith in bankruptcy cases is one based on the totality of the circumstances. The Bankruptcy Appellate Panel restated the nonexclusive list of good faith factors in this circuit in connection with the dismissal or conversion of a case.

///

---

[7] Though stating that he paid Santander $10,000.00 for the Dodge Dakota shortly before the bankruptcy case, he how lists it on Schedule B as having a value of only $9,000.00.

Factors to be considered in determining good faith include, but are not limited to:

1) The amount of the proposed payments and the amounts of the debtor's surplus;

2) The debtor's employment history, ability to earn, and likelihood of future increases in income;

3) The probable or expected duration of the plan;

4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5) The extent of preferential treatment between classes of creditors;

6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is dischargeable in Chapter 7;

8) The existence of special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the Bankruptcy [Code];

10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) The burden which the plan's administration would place upon the trustee.

*Villanueva v. Dowell (In re Villanueva)*, 274 B.R. 836, 841 (B.A.P. 9th Cir. 2002).

The court is troubled by the Debtor's conduct through this series of bankruptcy cases and the preferential treatment he has given to creditors between bankruptcy filings and in this case (payments on substantially undersecured claim to holder of first deed of trust). The Debtor has failed to disclose in the statement of financial affairs payments made to the holder of the first deed of trust, which he then uses as a justification to impose the

automatic stay. The sincerity of the Debtor in advancing a confirmable Chapter 13 plan is questionable, as the only plan presented is to fund a substantially overencumbered home (considering only the first deed of trust) by not paying anything to the Debtor's creditors holding general unsecured claims.

It is also clear that there are, and have been, significant inaccuracies in the Master Mailing Lists filed in the prior and current case, and the Debtor is choosing to either selectively omit persons who have asserted they are creditors of the Debtor (having filed proofs of claim in prior cases) or secretly pay these creditors and not disclose those payments in the Statement of Financial Affairs. The bankruptcy process and the Debtor prosecuting his bankruptcy cases in good faith are dependent on him truthfully, candidly, and accurately disclosing both assets, liabilities, and creditors.

Clearly, there has been substantial planning, preferential payments, and actions taken by the Debtor with respect to claims and creditors during the down periods between the multiple bankruptcy cases he has allowed to be dismissed for failure to file the schedules, statement of financial affairs, plan and Form 22C. Only now, after having diverted at least $23,000.00 to preferred creditors and omitting other persons who have filed claims from the Master Mailing Lists is the Debtor attempting to gain a third automatic stay. The Debtor has not rebutted by clear and convincing evidence the presumption of that this third bankruptcy case was not filed in good faith.

///

///

15

1    This Memorandum Opinion and Decision constitutes the court's
2  findings of fact and conclusions of law pursuant to Federal Rule of
3  Civil Procedure 52 and Federal Rule of Bankruptcy Procedure 9014.
4  The court shall issue a separate order consistent with the
5  Decision.

6  Dated: August 16, 2012                By the Court

7

8

9                                        Ronald H. Sargis, Judge
                                         United States Bankruptcy Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

1

## CERTIFICATE OF MAILING

2      The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
3  hereby certifies that the attached document(s) was served by mail
to the following entities listed at the address(es) shown below:

4

Service List:

5

David Cusick
6  PO Box 1858
Sacramento, CA 95812-1858

7

Office of the U.S. Trustee
8  Robert T Matsui United States Courthouse
501 I Street, Room 7-500
9  Sacramento, CA 95814

10 Lamar Smith
9434 Cross Way Elk Grove CA
11 Elk Grove, CA 95758

12 Jamil White
1851 Heritage Ln. Ste. #148
13 Sacramento, CA 95815

14

15

16 DATE:  8|17|12

17                              Deputy Clerk

18

19

20

21

22

23

24

25

26

27

28